IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUDY P. BROWN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:16-cv-303-TFM |
| | ) | [wo] |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION**

Following administrative denial of her application for Supplemental Security Income benefits under Title XVI of the Social Security Act, Judy P. Brown ("Brown" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision denying supplemental security income benefits.

### I. NATURE OF THE CASE

Brown seeks judicial review of the Commissioner of Social Security Administration's decision denying her application for supplemental security income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. In review of a social security case, the court will use the substantial evidence standard to affirm the Commissioner's decision if substantial evidence exists to support the decision. *Mitchell v. Commissioner,* 771 F.3d 780, 781 (11th Cir. 2014) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The court is limited in its review, therefore the court is "preclude[d] [from] deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1986)). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*); *Moreno v. Astrue,* 366 Fed. Appx. 23, 26-27 (11th Cir. 2010) ("failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (Citation omitted).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (Citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

assure that their income does not fall below the poverty line.³  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled.  20 C.F.R. §§ 404.1520;⁴ *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456 (11th Cir. June 10, 2015).  The ALJ determines:

---

³   SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

⁴   For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

> (1) Whether the claimant is currently engaged in substantial gainful activity;
>
> (2) Whether the claimant has a severe impairment or combination of impairments;
>
> (3) Whether the impairment meets or exceeds one of the impairments in the listings;[5]
>
> (4) Whether the claimant can perform past relevant work; and
>
> (5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the

---

[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. BACKGROUND AND PROCEEDINGS

Brown claims disability from major depressive disorder, panic disorder, osteoarthritis, headaches, and degenerative disc disease. (R. 19, 45-46, 160,184). Brown filed an application for Supplemental Security Income on September 19, 2012. (R. 17, 167-173). Brown initially alleged an onset date of June 1, 1973, but she later amended her onset date to reflect the filing date of September 19, 2012. (R. 71, 181). The claim was denied initially on January 8, 2013. (R. 17, 71-81). Upon denial of her application, Brown requested a hearing before an administrative law judge

---

[6] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

("ALJ"). (R. 17, 91-98). ALJ Ben E. Sheely conducted an initial evidentiary hearing for Brown on April 14, 2014 in Mobile, Alabama. (R. 31-42).

At the initial hearing, the ALJ determined that Brown had few medical records and documents in support of her alleged impairments. The ALJ rescheduled the hearing and sent Brown for an orthopedic examination of her neck, back, and hands. (R. 34-41). Dr. Richard Meadows conducted this examination of Plaintiff on April 30, 2014. (R. 296-298). The ALJ also recommended Brown's attorney to follow up on missing medical records. (R. 41). On August 15, 2014, the ALJ reconvened the continued evidentiary hearing for Brown in Mobile, Alabama. (R. 45). Brown again was accompanied by her attorney. The ALJ received direct testimony from both Brown and a vocational expert. (R. 43-70).

The remaining evidentiary record consisted of medical reports from treating and two consultative sources and a disability determination including a residual functional capacity assessment completed by a medical consultant[7], Samuel Williams, M.D., who reviewed Brown's medical records upon request of Alabama Disability Determination Services. (R. 71-81). The ALJ rendered an unfavorable decision on October 9, 2014. (R. 14). On March 1, 2016, the Appeals Council denied Brown's request for review (R. 1). Brown filed her Social Security Appeal on September 13, 2016. *See* Doc. 1, Complaint.

## V. ADMINISTRATIVE DECISION

Employing the five step process, the ALJ found that Brown has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2)[8]; the

---

[7] "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a).
[8] The ALJ found the following "severe" impairments: major depressive disorder, panic disorder, osteoarthritis, headaches and degenerative disc disease. (R. 19).

impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Brown does not have any relevant past work experience (Step 4). (R. 19-22). At Step Four, the ALJ also had a duty to determine Brown's residual functioning capacity. The ALJ found that Brown had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can stand and walk for six hours and sit for six hours in a workday. The claimant can occasionally climb ramps and stairs, and never climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, or crawl. The claimant can perform simple routine and repetitive tasks involving simple work related decisions and few work place changes. The claimant can have occasional interaction with co-workers, supervisors, and the public. (R. 22). At Step Five, the ALJ is required to determine whether Brown could perform other jobs in the national economy. The ALJ determined that Brown had the ability to do other work such as linen room attendant, stacker, and a meat clerk. Brown did not prove that she was unable to perform the suggested jobs; and consequently, the ALJ found that Brown has not been disabled since the alleged onset date. (R. 25-26).

## VI. STATEMENT OF FACTS

Brown was 58 years old at the time of her application, and during the August 2014 hearing. (R. 25). Brown completed high school, but she has no past relevant work history. (R. 25). Brown reported that she previously attempted to find work, but due to her depression and panic attacks she was not successful. (R. 201). She attempted to work as a baker for about a week sometime in 2013, but reported that "it was just too hard on my back and my hands. I couldn't stand and do it." (Doc. 50-51). After her divorce in 1998, her medical insurance was terminated, and she

became a self-pay patient, which limited her medical treatment. Her medical treatment was further limited once her alimony payments stopped in March 2012. (R. 50-51, 239, 268-88).

From 2000 through 2011, Brown was treated at Alabama Psychiatric Services, and she was treated at SpectraCare Health Systems beginning in 2012. (R. 233-240, 241-260). Brown was diagnosed as having Major Depressive Disorder and a Panic Disorder. Brown's psychological symptoms include depression with social isolation, difficulty concentrating, irritability, and anxiety with panic attacks. (R. 233-39, 262). Between July 8, 2010 and January 9, 2014, Plaintiff saw Dr. Bret M. Johnson, her primary care physician, on six occasions primarily for refills on her depression/anxiety medication. (R. 266-295). Dr. Randall Jordan, consulting psychologist, opined that in terms of vocation, Plaintiff can "carry out and remember instructions of a simple one-step nature . . . can do multi-step tasks without some degree of supervision." However, he concluded that Plaintiff's "ability to respond well to coworkers, supervision, and every day work pressures is compromised to a moderate to severe degree due to psychiatric issues." He further noted that in terms of vocation Plaintiff's "[p]hysical issues do not seem to be the primary limiting factor." (R. 263).

Brown also has significant musculoskeletal impairments such as osteoarthritis of both hands, degenerative disc disease of cervical, thoracic and lumbar spines, and likely rheumatoid arthritis. (R. 296, 297). Dr. Johnson reported arthritis/osteoarthritis in Plaintiff's medical history throughout his medical records. (R. 266, 268, 274, 277, 280, 283, 286). However, Brown denied muscular weakness, tingling or numbness, joint pain, joint swelling, muscle pain, back pain, shoulder pain, elbow pain, wrist pain, hip pain, knee pain, ankle pain, and foot pain. (R. 24, 267, 271, 275, 278, 281, 284, 287). Even so, Dr. Johnson opined in a medical source statement that in a normal work day Plaintiff could lift no more than 10 pounds occasionally and 5 pounds

frequently and that she could sit 8 hours a day, but stand or walk less than one hour. (R. 292). He further stated that he believed Plaintiff's complaints of pain, and that "osteoarthritis/fibromyalgia" could cause the pain. (R. 293).

Dr. Richard Meadows, State Agency Examining Orthopedist, similarly opined that Plaintiff could occasionally lift and carry no more than 10 pounds and that she could sit and walk continuously for no more than one hour and stand continuously for no more than 15 minutes. He further opined that Plaintiff could sit 6 hours out of an 8 hour day and stand and walk no more than one hour in an 8 hour day. (R. 307). Plaintiff testified that "it hurts my back and my neck to drive for a long distance" (R. 57), and that "I can't bend. I can't stoop . . . I can't do household chores like vacuuming, mopping, . . . because it's just way too painful. (R. 59). However, she reported in her Adult Function report that although many mornings she feels bad and does nothing until noon, (R. 194), she can do laundry and some cleaning and can shop for groceries. (R. 196, 197). For hobbies she reports Facebook, watching TV, and playing with her grandchildren a couple of times a month. (R. 198).

Upon request of Alabama Disability Determination Services, Samuel Williams, M.D., reviewed Brown's medical records, which did not include the records of Dr. Johnson, nor the examination by Dr. Meadows. (R. 71-81). Dr. Williams concluded that Plaintiff had moderate limitations in some areas of her mental functioning (R. 77-79), but based on her mental functioning and an assessment of vocational factors that she was not disabled. (R. 79-80). The ALJ ultimately concluded that Plaintiff was not disabled and had the residual functional capacity to perform medium work, which included occupations such as linen room attendant, stacker, and meat clerk. (R. 22, 25).

## VII. ISSUES

Brown raises four issues on appeal:

(1) The ALJ's finding that Ms. Brown could perform a reduced range of medium work activity was not based on the medical record?

(2) The ALJ erroneously rejected the opinion of a State Agency Examining Orthopedist?

(3) The ALJ erroneously rejected the opinion of a Treating Primary Care Physician.

(4) An individual with Ms. Brown's vocational profile would be found disabled even if limited to a full range of light work, under Medical-Vocational Rule 202.04

*See* Doc. 12 at p.1.

## VIII. DISCUSSION AND ANALYSIS

### A. Whether the ALJ's finding for reduced range of medium work is based on the medical record?

Plaintiff first argues that the ALJ failed to consider all the medical evidence of record in determining the Plaintiff's residual functional capacity. The residual functional capacity is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. Along with [her] age, education and work experience, the claimant's residual functioning capacity is considered in determining whether the claimant can work." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). (Citations omitted). The ALJ is required to consider all record evidence, which includes evidence of non-severe impairments. *Raduc v. Comm'r of Soc. Sec.*, 380 Fed. Appx. 896, 898 (11th Cir. 2010). (Citations omitted).

Specifically, Plaintiff argues that the ALJ improperly rejected the opinion of the treating primary care physician, Dr. Johnson, and of examining orthopedist, Dr. Meadows, regarding

Plaintiff's limitations in making the RFC determination. Both Dr. Johnson and Dr. Meadows opined that plaintiff could lift no more than 10 pounds occasionally and would need to sit between 6 to 8 hours in a work day. (R. 292, 307). The ALJ gave "little weight" to both of these opinions in making his RFC. (R. 24). On the other hand, the ALJ gave "great weight" to the opinion of non-examining, non-treating physician, Dr. Samuel Williams, in concluding Plaintiff had the residual functional capacity to perform medium work. (R. 22-24). Dr. Williams incorporated the records and opinions of Dr. Jordan, the consulting psychologist, into his findings. (R. 71-81). The ALJ gave "some to great weight" to the opinion of Dr. Jordan. (R. 24).

The law is well-settled; "absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight." *Winschel v.Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011). (Citations omitted). However, "good cause" to stray from the treating physician's opinion exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel,* 631 F.3d at 1179. If the ALJ does stray from the treating physician's opinion, he "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. (Citations omitted). Moreover, the opinion of a non-examining physician alone can not provide "good cause" because the opinion of a non-examining physician is entitled to little weight if contrary to the opinion of the claimant's treating physician. *See Swindle v. Sullivan,* 914 F. 2d 222, 227 n.3 (11th Cir. 1990) citing *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985).

The ALJ gave little weight to Dr. Johnson's opinions because they were inconsistent with (1) his own treatment notes and findings, (2) the overall treatment records, and (3) Brown's

activities of daily living.  Furthermore, the ALJ discounted Dr. Johnson's opinion because Brown's vital signs were generally normal during her examinations and Brown's primary reason for seeking treatment from Dr. Johnson was to seek medication refills. (R. 24, 266-295).  Indeed, the records of Dr. Bret M. Johnson, whom Plaintiff saw infrequently between July 8, 2010 and January 9, 2014, report that he prescribed a number of medications for Plaintiff's depression and anxiety including Klonopin, Effexor, and Celexa. (R. 269, 271).  However, nowhere in his treatment history with Brown did Dr. Johnson record any complaint by Plaintiff of discomfort in her hands or any other pain in her joints.  Further, during Brown's visits with Dr. Johnson, Brown denied muscular weakness, tingling or numbness, joint pain, joint swelling, muscle pain, back pain, shoulder pain, elbow pain, wrist pain, hip pain, knee pain, ankle pain, and foot pain. (R. 24, 267, 271, 275, 278, 281, 284, 287).  Accordingly, the Court concludes the ALJ "clearly articulate[d] the reasons for giving less weight to the opinion of a treating physician" and thus demonstrated good cause from departing from Dr. Johnson's opinion.  *See Lewis,* 125 F.3d at 1440.

Brown also argues that she is a "self-pay patient" who cannot afford medical treatment, and that due to a lack of insurance coverage Dr. Johnson's treatment record does not include examinations pertaining to Ms. Brown's musculoskeletal impairments.  See *See* Pl. Br. Doc. 12 at p. 11. The Eleventh Circuit has held "when a claimant cannot afford the prescribed treatment and can find no way to obtain it," she is excused from noncompliance. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  The ALJ noted Plaintiff's claim that "she had not had recent attention [to her musculoskeletal impairments] due to lack of insurance" (R. 23), and he questioned Plaintiff at the hearing about whether she had looked into the Affordable Care Act.  Plaintiff responded that she had not signed up.  (R. 37).  However, the ALJ did not credit Plaintiff's claim of poverty because he found that the medical record did not support Plaintiff's claim of disabling joint pain.

(R. 23-25). Specifically, the ALJ noted Plaintiff reported to Dr. Meadows that "her pain symptoms improved with heat and Aspirin." (Tr. 23) and she "has not made consistent complained {sic} regarding her physical impairments." (Tr. 24). Indeed, the Court notes that Plaintiff denied joint pain at every visit with Dr. Johnson. (R. 24, 267, 271, 275, 278, 281, 284, 287). Accordingly, the Court concludes substantial evidence supports the ALJ's conclusion about Plaintiff's lack of treatment for joint pain. *See Mitchell,* 771 F.3d at 781.

The ALJ also gave "little weight" to the opinion of Dr. Meadows, orthopedic examiner, because he found it was inconsistent with Brown's own reported activities of daily living and the examination findings from her overall treatment records. Further, the ALJ discounted Dr. Meadow's opinion because the X-rays performed by Dr. Meadows showed a lack of an acute abnormality despite some degeneration. (Tr. 24). Dr. Meadows saw Brown on April 30, 2014. (R. 296). During her appointment with Dr. Meadows, Brown stated that her pain symptoms improved with heat and aspirin. (R. 296). Dr. Meadows stated Brown had a full range of motion in her lumbar spine, despite findings of tenderness. (R. 297). Also, X-ray findings of the left and right hands and thoracic spine did not show any acute abnormalities. (R. 299-303). However, X-ray findings of the cervical spine, noted "advanced degenerative disc space narrowing at C5-6" and "degenerative anterior subluxation of C4 over C5." (R. 300). X-ray findings of the lumbar spine showed "grade II spondylolisthesis of L5 over S1." (R. 299). Dr. Meadows diagnosed her with osteoarthritis, "pain in joint, hand", degeneration in her cervical, lumbar and thoracic discs, and depressive disorder. (R. 297).

Based upon the Court's independent review of the record, the Court concludes that the ALJ did not err in discounting the opinion of Dr. Meadows insofar as it involved Plaintiff's upper extremity limitations. The ALJ considered Plaintiff's own testimony about her level of daily

activity, and concluded "[i]n activities of daily living the claimant has a mild restriction." (R. 20). In her Function Report, Brown stated "[i]f I'm better, I do some laundry and housekeeping." (R. 194). Brown also reported that she is able to drive around her local area, and that she is able to shop for groceries in the grocery store for a couple of hours. (R. 197). Furthermore, Plaintiff repeatedly denied joint pain when she visited Dr. Johnson. (R. 267, 271, 275, 278, 281, 284, 287). Brown's medical records and reports from Brown led the ALJ to reach the conclusion that Brown has only a mild limitation in completing her daily activities. Accordingly, the Court concludes substantial evidence supports the ALJ's conclusion that Brown has the RFC to perform medium work. (R. 22). *See Winschel,* 631 F. 3d at 1178.

### B. Whether the ALJ erred in failing to apply Grid Rule 202.04

Brown also argues that the ALJ should have used Grid Rule 202.04 in examining her work capabilities. Grid Rule 202.04 directs a finding of disabled if claimant "is 55 years of age or older, has a high school diploma, past work that is unskilled and is limited to light work." *Ferguson v. Berryhill*, 2017 WL 2454069 * 7 (M.D. Ala. June 22, 2017); 20 C.F.R. pt. 404 subpt.P, app.2. The grids are only applicable "when each variable on the appropriate grid matrix accurately describes the claimant's situation." *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987). Thus, Plaintiff argues that this grid, if properly applied, directed a finding of disabled.

In the instant action, the ALJ found Plaintiff is limited to medium work. (R. 22). The ALJ also recognized that Plaintiff had additional limitations which precluded the strict application of the Grids and thus precluded a finding of disabled or not disabled. (R. 25). Indeed, when a claimant's exertional limitations prevent the claimant from performing a full range of employment *or* when a claimant has non-exertional impairments that significantly limit basic work skills, the ALJ must not rely only upon the grids, but must consider the testimony of a VE to establish job

availability. *See, Miller v. Comm'r of Soc. Sec..* 241 Fed. App'x. 631, 635 (11th Cir. 2007) citing *Walker,* 826 F.2d at 1002-1003. Brown's impairments include non-exertional limitations of depression, panic disorder and certain manipulative or postural functional restrictions. (R. 19, 22); 20 C.F.R § 404.1569a(c)(1)(i)and(vi)("Some examples of nonexertional limitations or restrictions include . . . . [being] nervous, anxious, or depressed . . . [and] difficulty performing functions such as reaching, handling, stooping, climbing, crawling, or crouching").

These non-exertional limitations prompted the ALJ to consult a vocational expert who was present at the August 15, 2014 hearing and during the questioning of the claimant. The vocational expert testified that a hypothetical individual of the same age, same education level and same history as Plaintiff could "perform a full range of medium work". Specifically, that individual could "lift and carry 50 pounds occasionally, lift and carry up to 25 pounds frequently". . . "stand or walk [or sit] approximately six hours in an eight hour work day" . . . "[w]ith occasional climbing of ramps or stairs, never climbing ladders, ropes or scaffolds. Occasional balancing, stooping, kneeling, crouching and crawling. Work limited to simple, routine repetitive tasks involving simple work-related decisions, few if any workplace changes, and occasional interaction with the public, coworkers and supervisors." (R. 64). Ultimately, the ALJ determined that the residual functional capacity as stated by the vocational expert "accommodates the claimant's physical and mental impairments and arising symptomology." (R. 23). Accordingly, the Court concludes that the ALJ did not err in failing to apply Grid Rule 202.04 because substantial evidence supports the ALJ's conclusion that Plaintiff had the residual functional capacity to perform medium work. *See Mitchell,* 771 F.3d at 781.

## VIII. Conclusion

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision. A separate order will be entered.

DONE this 18th day of September, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE